IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAIYD A. MUHAMMAD, | No. 4:21-CV-02117 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| HERMAN QUAY, | |
| Respondent. | |

MEMORANDUM OPINION

JULY 26, 2022

Petitioner Saiyd A. Muhammad is currently confined at the United States Penitentiary, Allenwood (USP Allenwood), in White Deer, Pennsylvania. He filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He asserts that he was wrongly convicted of a disciplinary infraction by USP Allenwood officials, resulting in lost good-conduct time and a fine. For the following reasons, the Court must deny Muhammad's Section 2241 petition.

I.  BACKGROUND

Muhammad is serving a 168-month sentence for interference with commerce by robbery imposed by the United States District Court for the Middle District of North Carolina.[1] On July 29, 2020, Muhammad's cell was searched and he was reportedly found to be in possession of 424 urinary catheters, 71 chux pads, and

---

[1] *United States v. Muhammad*, No. 1:14-CR-00353, Doc. 68 (M.D.N.C. Aug. 15, 2016).

392 lubricating packets, all of which were in excess of the prescribed amount that he was permitted to possess (a maximum of 21 of each item per week).[2] According to the incident report, due to COVID-19 and the supplies potentially being contaminated, the items could not be reused and would have to be destroyed, resulting in a loss totaling $299.87.[3] The report further alleged that Muhammad "purposely and deliberately" requested these medical supplies every Friday for 20 weeks despite having excess amounts on hand, thereby falsely representing to staff that he required additional supplies.[4] He was charged with Offense Code 218 (Destroying Property Over $100) and Code 313 (Lying or Falsifying Statement).[5]

Muhammad contested the charges, claiming that he had arrived from a different correctional facility with several months' worth of medical supplies, that the excess supplies found in his cell were expired and therefore useless, and that he had repeatedly asked medical staff if they could dispose of them but they had told him, "not now."[6] In his Section 2241 petition, Muhammad further avers that USP Allenwood medical staff orchestrated the disciplinary charge in retaliation for Muhammad assisting another inmate with filing a civil rights action against them.[7]

---

[2]   Doc. 8-1 at 16.
[3]   Id.
[4]   Id.
[5]   Id.
[6]   See id. at 8, 17-18.
[7]   See Doc. 1 at 9.

On August 17, 2020, following a hearing, Muhammad was found guilty of violating Code 218 (Destroying Property Over $100).[8] The disciplinary hearing officer (DHO) sanctioned Muhammad with a disallowance of 27 days of good-conduct time and ordered him to pay restitution in the amount of $299, which prison officials then deducted from Muhammad's inmate trust fund account.[9]

Muhammad appealed the DHO's decision to the Regional Director, who denied the appeal.[10] The Regional Director explained that the DHO had reasonably determined that Muhammad had violated Code 218 based on the written report and photographic evidence, there were no due process concerns or policy deviations in the disciplinary proceedings, the sanctions imposed were not disproportionate to the misconduct, and the DHO's decision was "based on the greater weight of the evidence."[11]

Muhammad appealed to final review with the General Counsel (or "Central Office"), and that appeal was likewise denied.[12] General Counsel found that "the determination of the DHO [was] reasonable and supported by the evidence," Muhammad's due process rights were not infringed during the disciplinary process, and the sanctions imposed were "commensurate" with the severity of the

---

[8]   *See* Doc. 8-1 at 9-10.
[9]   *Id.* at 10, 14-15.
[10]  Doc. 1-14 at 6.
[11]  *Id.*
[12]  *See id.* at 4-5.

offense.[13]

Muhammad subsequently filed the instant Section 2241 petition in January 2022.[14] His claim, which essentially asserts insufficiency of the evidence, implicates a procedural due process challenge to his disciplinary proceedings. The petition has been fully briefed and is ripe for disposition.

## II.  DISCUSSION

Muhammad, through the allegations in his petition, contends that his Fifth Amendment procedural due process rights were violated when he was convicted of destruction of property without sufficient evidence. His claim fails, however, because there was at least some evidence that supports the DHO's decision.

Inmates retain certain procedural due process rights in prison disciplinary proceedings, although these rights "may be curtailed by the demands and realities of the prison environment."[15] *Wolff v. McDonnell* enumerates those protections and requires, at minimum, (1) the right to appear before an impartial decision-making body; (2) written notice of the charge(s) at least 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence (so long as the presentation of such evidence is not "unduly hazardous to institutional safety or correctional goals"); (4) if the inmate is illiterate or complex

---

[13]  *Id.* at 4.
[14]  *See generally* Doc. 1.
[15]  *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)).

issues are involved, assistance from another inmate or a staff member; and (5) a written decision by the factfinder setting forth the evidence relied on and the reasons for the disciplinary action.[16]

When an inmate challenges the sufficiency of the evidence in a prison disciplinary proceeding that resulted in the loss of good-conduct time, "the requirements of due process are satisfied if *some evidence* supports the decision" to revoke good-time credits.[17] Determining whether this standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."[18] Rather, the relevant inquiry for the court is whether there is "any evidence in the record that could support the conclusion" reached by the decisionmaker.[19]

Under this minimal evidentiary burden, Muhammad's due process claim fails. The DHO, in his written report, primarily relied on the July 29, 2020 incident report, which catalogued the numerous excess catheters, chux pads, and lubricant packets found in Muhammad's cell.[20] He also relied on photographic evidence showing the large amounts of confiscated excess medical supplies.[21] The

---

[16] *Wolff*, 418 U.S. at 563-70 (citations omitted).
[17] *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985) (emphasis added).
[18] *Id.*
[19] *Id.* at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013) ("[T]he 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." (citation omitted)).
[20] Doc. 8-1 at 9-10.
[21] *Id.* at 9, 10.

DHO further indicated that he had reviewed Muhammad's personal property record from the time of his transfer to USP Allenwood, and the only medical device mentioned was a wheelchair (no other medical supplies were listed).[22]  This evidence plainly satisfies the "some evidence" requirement, and thus there was no due process violation.

    The Court is cognizant that Muhammad has presented countervailing evidence—both at his disciplinary hearing and with his habeas petition—that at least some of the medical supplies in question were expired and that he had repeatedly attempted to have prison officials properly dispose of them.[23]  Nevertheless, the Court's task is not to weigh evidence or relitigate the disciplinary proceeding.  The sole question on habeas review is whether there was "any evidence in the record" to support the DHO's decision, and in this case that question must be answered in the affirmative.  In sum, there was no due process violation and Muhammad's Section 2241 petition must be denied.

---

[22] *Id.* at 10.

[23] Muhammad also takes issue with the finding that he "destroyed" property, as he argues that none of the supplies were destroyed and some of them, in fact, were reissued to him after the events in question. *See* Doc. 1 at 6, 9.  The DHO found that the property was destroyed because it was potentially contaminated and could not be reused.  Even if, as Muhammad claims, some of those allegedly contaminated supplies were reissued to Muhammad by medical staff after the disciplinary proceedings (rather than being destroyed as the incident report claimed they would have to be), such a fact would not permit the Court to disturb the DHO's decision.  That decision was based on the record evidence at the time of the hearing.  In other words, after-the-fact malfeasance by the medical staff does not impugn the constitutionality of the DHO's adjudication.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Muhammad's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge